UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS.

CIVIL ACTION NO: _____

**CHRISTINE PARKER**
*Plaintiff*

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION**
*Defendant*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. This is an action under 42 U.S.C. section 1981 for unlawful discrimination based upon race, and breach of contract. This action is brought by Plaintiff Christine Parker, a White/Caucasian female who was denied employment with Defendant International Business Machines Corporation ("IBM") in July 2021 when an offer of employment made to her was rescinded, due to her being White/Caucasian and not racially Indian.

**JURISDICTION AND VENUE**

2. Jurisdiction over this matter lies in this Court pursuant to 28 U.S.C. §1343.

3. Venue in this District Court is proper because the position for which Plaintiff applied and the position to which the rescinded offer related, was to be located in Boston, Suffolk County, Massachusetts. Plaintiff is a resident of Boston, Suffolk County, Massachusetts. Defendant has various offices and places of business in Massachusetts, including in Middlesex and Suffolk counties. Defendant does business throughout Massachusetts. All communications between

Plaintiff and Defendant relevant to the matters in this complaint, took place by phone or text message or email.

**THE PARTIES**

4.  Plaintiff Christine Parker is a female resident of Boston, Suffolk County, Massachusetts. She is a citizen of the United States. Her race is White/Caucasian.

5.  Defendant International Business Machines Corporation ("IBM") is a foreign (New York) corporation doing business in Massachusetts.

6.  At all times relevant to this Complaint, Defendant was involved in recruiting Plaintiff for employment, offering employment to Plaintiff, and promising employment to Plaintiff.

7.  At all times relevant to this Complaint, Plaintiff was engaged in seeking employment with Defendant, and eventually accepted employment with Defendant, after rejecting other offers of employment which had been made to her by other employers, due to the offer and representations made to her by Defendant.

**FACTUAL BACKGROUND**

8. Ms. Christine Parker is a 58 year old White female. For over 25 years, she has successfully worked for various corporate entities including Citigroup, BNP Paribas, EY, Pegasystems and others, as an employee. She has worked for these businesses, often with global responsibilities, as a Strategic Growth and Transformation Executive leading extensive, complex business and technology initiatives.

9. In October 2020, Ms. Parker was initially contacted by an individual she had previously worked with while she was with Pegasystems (and while he was at KPMG), Mr. Siegel. Subsequently, Ms. Parker's main contact at IBM was IBM employee Mr. AJ D'Antonio,

an IBM Executive Recruiter located in Chicago.

10. Between November 2020 and July 2021, Ms. Parker was interviewed by IBM for several positions. None of the interviews were in person, rather they were all virtual, by Zoom or Teams or telephone. Over the course of these months, Ms. Parker and Mr. D'Antonio decided to focus Ms. Parker's efforts on one particular position with IBM, namely that of "Partner, Global Hybrid Cloud Transformation Core Banking Offerings Leader-Global Business Services."

11. During this same time period, Ms. Parker was also interviewing with other businesses for similar roles and global remit. Ms. Parker was entertaining at least three other offers from technology and consulting firms, including Genesys, DXC Consulting, and Emergis Global Capital.

12. At Genesys, Ms. Parker was offered the position of Vice-President, Head of Financial Services Industry Solutions. This position included a compensation package consisting of a base salary of $220,000 per year, 20% bonus, stock options, a sign on bonus of $50,000 in stock options and $50,000 in cash, as well as various other benefits. Ms. Parker declined this offer on July 9, 2021 based on the assurances and verbal offer she received from IBM.

13. At DXC Consulting, Ms. Parker was offered the position of Vice-President, Client Partner for Financial Services. The compensation package for this position was essentially the same as the package she had been offered by Genesys. Ms. Parker declined this offer in May 2021, based upon the assurances and verbal offer she received from IBM.

14. At Emergis Global Capital, Ms. Parker was offered the position of Senior Managing Director, Business Transformation. The base compensation for this position was significantly higher than that for the other two positions, with the remaining compensation package being

similar. Ms. Parker declined this offer in April 2021, based upon representations made to her by IBM regarding a position different from the position at IBM which was later rescinded.

15. By approximately April 2021, Ms. Parker had stopped seeking other job opportunities based on the assurances and representations made to her by IBM, so that she could focus on the IBM hiring process.

16. From April 2021 through July 2021, Ms. Parker was involved in the hiring process for the "Partner, Global HCT Core Banking Offerings Leader-Global Business Services" position (the "Partner" position). The various IBM managers involved in this process were: Mitchell Siegel (White); Aparna Sharma (Indian); Sreejit Roy (Indian), Varun Bijlani (Indian); AJ D'Antonio (White). Mr. Siegel, Ms. Sharma, Mr. Roy and Mr. D'Antonio worked for IBM in the United States. Mr. Bijlani worked for IBM in India.

16. Mr. Siegel was involved in this matter to the extent that he had introduced Ms. Parker to this process, and to some extent acted as her coach as this went on. Ms. Sharma and Mr. Roy were hiring managers for the position, and interviewed Ms. Parker. Mr. Bijlani supervised Ms. Sharma and Mr. Roy. He also interviewed Ms. Parker, more or less as a formality.

17. By June of 2021, as Ms. Parker had already been interviewing for other positions with IBM, she was fast tracked directly to the hiring managers for the Partner position. On June 17 and July 1, she had an interview with Ms. Sharma, which was co-led by Mr. Roy. On June 21, 2021 she had an interview with Mr. Roy, which was co-led by Ms. Sharma. Indeed, it was immediately after this interview that Ms. Parker shared with Executive Recruiter Mr. D'Antonio, her recent offer letter from Emergis Global Capital so that he could use that as a benchmark for IBM's offer.

18. On June 24 2021 Ms. Parker informed Mr. D'Antonio that she was getting pressure from

Genesys to accept their offer of employment, so she asked him for a timeline for an IBM offer. He stated that the details of the offer were being worked through and that she should expect the official offer shortly before the July 4th holiday.

19. On July 1, 2021 Ms. Parker had her interview with Mr. Bijlani. During this interview Ms. Parker was told that she was the only candidate in the running and that an offer was "imminent."

20. On July 7, 2021 Mr. D'Antonio called seeking Ms. Parker's verbal commitment to wanting the Partner position, and her willingness to accept an offer for that position from IBM. Ms. Parker confirmed her express interest in the position and stated that she would indeed accept an offer for this role.

21. On July 9, 2021 Mr. D'Antonio called to follow up with Ms. Parker. He expressed how Ms. Sharma and Mr. Roy were "extremely excited about you joining and can't wait till you are aboard." He said he was also calling to provide a "general sense of the offer, which may be greater than what I was about to present based upon your strong candidacy."

22. On July 12, 2021 Mr. D'Antonio called Ms. Parker with a confirmed outline of the offer and the next steps in the written offer process. He stated that everyone involved in the process was very excited and "on board" and could not wait until Ms. Parker was "on board." Mr. D'Antonio stated that "this is a done deal."

23. Mr. D'Antonio further informed Ms. Parker that there were written approvals from Ms. Sharma and Mr. Bijlani as well as from a senior Human Resources representative. He stated that the offer would be generated by electronic delivery for her signature.

24. Mr. D'Antonio stated that once Ms. Parker had signed the offer, a background check would take place which would take 5-10 days. Mr. D'Antonio requested that Ms. Parker immediately start providing what was needed for the background check. Ms. Parker provided her social

5

security number and address, and was waiting to be informed what other information was needed for the background check. Mr. D'Antonio also explained the Partner onboarding and executive coaching program which was offered to newly hired Partners.

25. On July 14, 2021 Ms. Parker sent a text message to Mr. D'Antonio asking if everything was moving along smoothly, and whether he needed anything further from her. Mr. D'Antonio texted back:

> "no all set on my end. I have touted the offer for formal approval. I will keep you posted as it moves through. We OK on timing."

Ms. Parker texted back that everything was still fine regarding timing.

26. On July 20, 2021 Mr. D'Antonio shared with Ms. Parker that formal signature approvals had been completed, including from Human Resources and Legal, and that the written offer was being generated. He let her know that all approvals had been completed in order to make the final offer. Earlier in the process Ms. Sharma had informed Ms. Parker that the candidates had been narrowed down to one, which was Ms. Parker, and that she was very excited for Ms. Parker to be joining the team especially as another female leader.

27. All approvals for the hiring of Ms. Parker had been obtained, and the written offer was being drafted and finalized. Based upon the discussion she had, the final base salary was to be $375,000 to $400,000, with a bonus of up to 35% of base salary, equity of up to 25% of base salary, a signing bonus of $100,000, an additional signing bonus of $25,000, plus benefits.

28. Ms. Parker's position was to be based in Boston (at her residence), with the understanding that she would be working remotely from Boston and travelling as needed.

**29. Ms. Parker was shocked when later on July 20, 2021 Mr. D'Antonio informed her by phone that the offer was being rescinded. Mr. D'Antonio said that he was sorry, that this**

**had been a "done deal," but that Ms. Sharma had recently moved to a new role, and that Mr. Roy was now the sole lead for the practice of which the position was a part. He told her that Mr. Roy had decided to promote a male Indian employee, in India, into the Partner role with absolutely no review by his supervisor Mr. Bijlani or anyone else. The person in India who was hired instead of Ms. Parker was racially non-White/non-Caucasian, and was racially Indian.**

30. Mr. D'Antonio confirmed that Ms. Parker had been the only candidate for the role, that he was taken by surprise by what had happened, and that the person selected had not been part of the candidate process. Mr. Roy simply did this once he became the sole leader, even though according to Mr. D'Antonio, Mr. Roy had been "fully on board" with Ms. Parker's candidacy and the offer made to her.

31. The statements made by Mr. D'Antonio with regard to this sudden rescission are particularly telling. Mr. D'Antonio stated that he was "embarrassed on behalf of the firm," he apologized profusely, and he stated, "this is not right." These are admissions binding upon IBM. Mr. D'Antonio expressed that he was committed to trying to find another job for Ms. Parker at IBM, but that never happened.

32. At the time her offer of employment was rescinded, Ms. Parker was qualified for this Partner position, the managers at IBM knew that she was qualified, and they acknowledged that she was qualified. She was replaced in this position by an Indian who was not even part of the candidacy or hiring process, but who had apparently been an acquaintance of Mr. Roy.

**33. The only reason Ms. Parker's offer was rescinded, and she was not hired, was her race, White/Caucasian. The only reason Ms. Parker was not hired was because she was not racially Indian. Ms. Parker was discriminated against by IBM due to her race when her offer was rescinded, and she was not hired. But for her race, Ms. Parker would have been hired. But for her race the employment offer would not have been rescinded.**

34. Once the Partner offer was rescinded, Ms. Parker continue to seek employment at IBM and elsewhere. Unfortunately, it took her 2.5 years to find appropriate employment, with she eventually obtaining a compensation package substantially less than what she had been promised by IBM for the Partner position. She was not employed in a comparable position until January 2024, and the position she accepted in January 2024 paid her less compensation than she would have received in the IBM position. During this extensive period of unemployment, Ms. Parker had various serious financial difficulties. Ms. Parker did an extensive job search during her period of unemployment. She also inquired whether the positions she had declined based upon the representations made to her by IBM, were still available, but they were not.

35. Ms. Parker's experience with IBM will always have a negative impact upon her career. Wherever she may look for work, Ms. Parker will have to explain the 2.5-year gap in her work history. This will continue to be humiliating, compromising and will continue to impact her income for years to come.

36. This discrimination also caused Ms. Parker physical problems, severe depression and anxiety, lowered esteem and self-doubt, and various other physical and psychological symptoms for which she engaged in treatment by her primary care physician and a psychotherapist. Ms. Parker's experience with IBM is still extremely emotionally painful for her, and she has not yet

recovered from the substantial financial damage it has caused her to suffer.

37. As is discussed at paragraphs 12 and 18 above, in early July 2021, Ms. Parker had pending a lucrative offer of employment from Genesys. At this time, Genesys had been pressing Ms. Parker to accept the offer it had made to her, facts of which she made IBM aware. Based upon the promises and assurances of employment made to Ms. Parker by IBM from November 2020 through early July 2021, on July 9, 2021, Ms. Parker informed Genesys that she was declining its offer of employment. Ms. Parker did this based upon her reasonable reliance upon the promises and representations made to her by IBM that she was going to be employed by IBM. Ms. Parker relied upon these promises and representations to her detriment, as several weeks later IBM informed Ms. Parker that it was rescinding the offer of employment which had been made to her. By that time she was no longer able to obtain employment with Genesys.

38. IBM is responsible and liable for the actions of its managers and supervisors set forth in this complaint. The actions for which IBM is responsible, constitute illegal discrimination on the basis of race in violation of 42 U.S.C. section 1981, and breach of contract. These actions for which IBM is responsible, were knowing, intentional and willful.

39. The actions Plaintiff complains of in this complaint, have caused Plaintiff to suffer severe emotional pain and suffering as well as substantial financial injuries. These injuries will continue into the future.

## COUNT I
## AGAINST DEFENDANT IBM
## FOR DISCRIMINATION ON THE BASIS OF RACE, IN VIOLATION OF 42 U.S.C. 1981

40.     Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1-39

above.

41. The person selected for the position at issue in this action rather than Plaintiff, was racially Indian.

42. The person selected for the position at issue in this action rather than Plaintiff, was non-White/Caucasian.

43. By its actions set forth above, and by the actions of its agents, employees, supervisors and managers for which it is responsible, Defendant IBM has engaged in racial discrimination against Ms. Parker, in violation of 42 U.S.C. section 1981.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant IBM, in an amount to be determined by this Court, including monies to compensate her for lost back pay and benefits, lost future pay and benefits, injury to her career, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

### COUNT II
### AGAINST DEFENDANT IBM
### FOR BREACH OF CONTRACT

44. Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1-43 above.

45. Plaintiff reasonably relied to her detriment upon the promises and representations made to her by IBM's agents, employees, supervisors and managers. As a result of her detrimental reliance, a contract was formed between Plaintiff and IBM, that Plaintiff would be employed by IBM on the terms and conditions set forth in paragraph 27 above.

46. By its actions set forth above, and by the actions of its agents, employees, supervisors and managers for which it is responsible, Defendant IBM has breached the contract which was formed between itself and Ms. Parker.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant, IBM, in an amount to be determined by this Court, including monies to compensate her for lost back pay and benefits, lost future pay and benefits, interest, costs, attorney's fees, and such other and further relief that this Court deems just and proper.

## JURY TRIAL DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL COUNTS AND ISSUES SO TRIABLE.**

Respectfully submitted,
CHRISTINE PARKER
By her Attorney,

/s/ Mitchell J. Notis

Mitchell J. Notis, BBO # 374360
LAW OFFICE OF MITCHELL J. NOTIS
27 HARVARD STREET
BROOKLINE, MA 02445
Tel.: 617-487-8677
mitchnotis@aol.com